SARAH GREEN, ADMINISTRATRIX, APPELLEE, v. CUDAHY
PACKING COMPANY, APPELLANT.

FILED DECEMBER 29, 1916.   No. 19078.

1. Master and Servant: INJURY TO SERVANT: PLEADING AND PROOF:
   VARIANCE.   Where it is alleged in a petition that a servant fell
   into an unguarded hole in the floor of a room adjoining the room
   in which he worked, and the proof shows that the room with
   the unguarded hole in the floor is in a separate building from
   that in which the servant worked, but that the two buildings were
   connected by a foot-bridge, or viaduct, the variance, if any, be-
   tween the allegation of the petition and the proof is immaterial.

2. ———: ———: DUTY OF MASTER.   It is the duty of a master to use
   reasonable care to provide a safe way of ingress and egress to the
   place of employment.

3. ———: ———: PRESUMPTIONS.   Where the master has furnished
   a number of such ways, and has kept them guarded and free from
   pitfalls, the servant may assume that he will continue to exercise
   such degree of caution as is necessary to keep these ways safe
   for passage.

4. ———: INJURY TO SERVANT: LIABILITY OF MASTER.   And if the
   master permits one of such ways to be left in an unsafe condition
   and, as a result thereof, a servant suffers injury, without negligence
   on his part, the master will be liable.

APPEAL from the district court for Douglas county: JAMES P. ENGLISH, JUDGE. *Affirmed.*

*James C. Kinsler,* for appellant.

*Smyth & Schall, Ed. P. Smith* and *Herman Aye, contra.*

MORRISSEY, C. J.

John Green, an employee of defendant, suffered injuries, September 24, 1913, which resulted in his death the following morning. Plaintiff, as administratrix of his estate, brought this action against his employer and recovered a judgment for $4,365, and defendant has appealed.

Plaintiff alleged that on the evening of the 24th of September, 1913, Green was required to work overtime and remained at his task until after dark; that Green came to his death by reason of the carelessness and negligence of the defendant, in that, in order to leave the room where he was employed, through the customary and usual exit, he passed through an adjoining room, and thence down a stairway to the street; that, in the floor of this adjoining room through which he passed, the defendant had cut a large hole or opening about 20 feet square, that this opening was left unguarded, and the room unlighted, and that Green fell through the opening to his death.

The defendant answers, alleging that the hole or opening, as designated in plaintiff's petition, was not in the floor of the building in which Green worked, but that it was cut in the floor of a separate building belonging to defendant; that Green was employed to work in the "new beef house," and that this opening in the floor had been cut in the "old beef house," and that the old beef house had been condemned several months before, and was on the opposite side of the roadway and about 50 feet distant from the new beef house, and that the hole or opening was about 60 feet in length and 15 feet in width; that the interior of the building was being

wrecked and demolished preparatory to reconstruction; and that all of these facts were well known to Green. It further alleged that after Green had finished his work for the day he negligently and voluntarily went upon the third floor of the old beef house, "well knowing that it was unlighted, dark and dangerous, and that in so doing he departed from the line, scope and place of his employment;" alleged that there were several safe exits from the room in which Green worked; that Green knew of these exits; that he wrongfully, negligently and voluntarily failed to use any of them; and that if he received the injuries, as alleged in plaintiff's petition, it was through his own negligence and the negligence of his fellow servants; and further that he had assumed whatever risk, if any, there was in entering the partially destroyed building. The reply was a general denial of new matter alleged.

Defendant has made 63 assignments of error, but we shall not undertake to discuss them separately. Indeed, they do not require separate discussion. The principal point urged is that the petition alleged the opening in the floor was in a room adjoining the room in which Green worked, and that the proof wholly failed to show an opening in the floor of any room adjoining this room. Laying aside technical distinctions, it may be said that plaintiff's petition is based on the assumption that the room in the old beef house is a room adjoining the room in the new beef house, though there is a private alley running between the two buildings. Counsel for defendant would have us hold that it is not an adjoining room. There is no plat or drawing of either building pointed out in the record, but, if we understand the testimony of the witnesses, the Cudahy packing plant has many buildings. Among others are the buildings known as the old beef house, and the building known as the new beef house. As may be inferred from their designations, the old beef house was first erected. Later the new building was erected, and there are a few yards

between the two buildings. There is a discrepancy in the evidence as to the distance they are separated. The testimony varies all the way from 5 or 6 yards to 15 or 20 yards. The distance, however, is not material. The new building stood on higher ground than the old building, and they were connected by a bridge or viaduct leading from the third floor of the old building to the first floor of the new building. The time-keeper's office was so located that many employees in the new building would report at the time-keeper's office in the morning, get their check, or time card, go up the stairs into the old building, pass through this room with the opening in the floor, go over the bridge and into the new building, and return over the same route in the evening to the time-keeper's office. This had been Green's practice for sometime before he met his death. While there were other means of egress from the new beef house, it is made perfectly plain that the route mentioned was at least one of the regular routes followed by the employees of defendant. The opening in the floor had been guarded by putting substantial rails around it, but the men engaged in re-modeling the building would, from time to time, remove the guards as they raised or lowered machinery, but when their work was done they would again replace the guards. There is testimony showing that these guards were in place late in the afternoon of September 24, and no person saw Green fall through the opening. Certain conditions are shown, however, and from these it may be assumed that the guards were not in place when he undertook to pass through the room after completing his day's work. One of defendant's foremen was called as a witness for plaintiff, and he testified that about 7 o'clock on the morning of September 25 his attention was attracted to the body of a man lying on the floor below this opening; that he went down and found it to be John Green, who was then alive, but unconscious; that he looked to see if the guards or rails were in place, and that there was, at that time, no guard

or rail on the east end of the hole—"there was no rail there." Another employee testified to the same thing. Indeed, there can scarcely be said to be a conflict of evidence on that point. There is no dispute about the lack of light in the room at the time Mr. Green quit work and when it is assumed that he met this accident. Appellant says in its reply brief: "There were no electric lights in the old beef house at any time after dark." For the purposes of this review, we may assume that the room was dark; that there was no rail around this hole; and that Green fell therein to his death.

Defendant takes the position that these matters are entirely immaterial; that "Green had no business there; that it was not a place where he was employed, nor where his employment required him to be; that the defendant owed him no duty with reference to the condition of the old beef house, and therefore could be guilty of no negligence toward him, no matter whether the railing was up or down on the morning that he was found in the old building." Practically all of its assignments of error are based on this assumption. If defendant is correct in this, the judgment cannot stand. If it is not right in this assumption, there is little left of its assignments of error. Defendant argues that the proof fails to show any hole in the floor, as alleged in the petition; that this hole which we have described in the old building is not in a room adjoining the room in which Green worked. But we are not impressed with the logic of the argument. Perhaps the petition is more specific than is necessary. It might have been sufficient to allege that as he left the room where he was employed, passing over the usual route of exit, he fell into this hole, without saying that it was in a room adjoining the room in which he worked. But it is evident both from the answer and the proof that all parties understood exactly the location of the buildings, the rooms, and the unguarded hole into which Green fell. No one was misled for a single moment. Defendant says there were

other means of ingress and egress, but does not point out the testimony bearing out the statements. However, we will assume it to be true. The proof does show that the route taken by Green was one of those usually and customarily taken, not only by him, but by a large number of the employees, with the full knowledge and consent of defendant's superintendents and foremen. It also appears to be the most convenient route. In fact this bridge, or viaduct, seems to have been constructed for that very purpose. It constituted an invitation to the employees to follow that route. The men were seen to go back and forth there daily, and the foreman engaged in remodeling the old building recognized the danger of leaving the opening unguarded, for he had it inclosed with guards and rails. The deceased passed back and forth there daily, undoubtedly observed the guards and relied upon them. This was a large room with some small lights on a distant side thereof, but not sufficient to light that part of the room through which Mr. Green attempted to pass. It was the duty of the employer to keep this hole guarded.

It is not only the duty of the employer to provide a reasonably safe place for his employees to work, but that duty carries with it the obligation to provide a reasonably safe ingress and egress. Of course, defendant argues that it did furnish a safe way of ingress and egress, and that Green was guilty of negligence in attempting to make his departure through this old building. But where the employer has undertaken to furnish a number of such ways, and has kept them guarded and free from pitfalls, the employee may assume that he will continue to exercise such a degree of caution as is necessary to keep these ways safe for passage, and Green was not guilty of negligence in choosing the route, on that evening, which theretofore he had followed with perfect safety and which he might still have followed in safety had the guards been maintained around this opening.

Neither did he assume the risk of this opening in the floor being left unguarded. He had passed by it from day to day. He had seen it duly protected, and he could not anticipate that it was in a different condition from what he had been accustomed to see it. The workmen employed around this opening might be said to have assumed the risk of such employment, but Green was not so employed, and the assumption of risk cannot be applied.

We cannot undertake to discuss seriatim the numerous assignments made. If we were to adopt defendant's theory of the case, many of them would be good; but we do not adopt that theory, but hold that there is no material variance between the pleadings and the proof, and that this opening in the floor of the old beef house is sufficiently designated in the petition, and, if it is not, the case is one of those falling within section 7706, Rev. St. 1913, providing: "No variance between the allegation in a pleading and the proof is to be deemed material unless it have actually misled the adverse party, to his prejudice, in maintaining his action or defense upon the merits." It follows that each of the assignments based upon this theory are without merit. This applies as well to the exceptions taken to the instructions as to the rulings on the introduction of evidence. The jury were properly instructed. As to the instructions asked by the defendant, they are for the most part based on a theory of the case which we have heretofore said is not sustained, and they were therefore properly denied.

The verdict of the jury is fully sustained, the record is free from error, and the judgment is

AFFIRMED.

FAWCETT, J., not sitting.